UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 04-311-DLB

RODNEY VEST, ET AL                                                    PLAINTIFFS

VS.                **MEMORANDUM OPINION & ORDER**

CORRECTIONS CORP. OF AMERICA                           DEFENDANT

*******************************

      This negligence action arises out of a single-car accident that occurred on the morning of September 9, 2003. Plaintiff Rodney Vest, the driver and sole occupant of the vehicle, fell asleep at the wheel after working two consecutive eight-hour shifts for Defendant, his employer. Vest alleges that the accident was caused by Defendant's negligence, and his wife, Carol, has brought her own claim for loss of consortium. The Court's jurisdiction is based upon diversity of citizenship.

      This matter is presently before the Court upon Defendant's motion for summary judgment. (Doc. #13). Plaintiffs filed a response (Doc. #15), to which Defendant replied (Doc. #17). On December 22, 2005, the Court held the final pretrial conference in this matter and heard oral argument on the motion. Plaintiffs were represented by Robert Wier, and Defendant was represented by Ed Henry, Jane Graham, and Kara Marino, respectively. The motion, having been fully briefed and argued, is now ripe for adjudication.

## I.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

At all relevant times herein, Plaintiff Rodney Vest was employed as a correctional officer at Otter Creek Correctional Facility ("Otter Creek"), in Wheelwright, Kentucky.  Otter Creek is a privatized prison owned and operated by Defendant Corrections Corporation of America ("CCA").  CCA is a Maryland corporation, with its principal place of business in Tennessee.  Vest was employed by Defendant as a correctional officer at Otter Creek from Spring 2003 until he suffered a serious automobile accident on his way home from work on September 9, 2003.

The accident, which forms the basis of this lawsuit, occurred at approximately 9 a.m. on September 9, 2003.  Vest, who was the driver and sole occupant of the vehicle, was driving north on Route 7 when fell asleep at the wheel, causing his vehicle run off the roadway and strike a tree.  He had just finished working two consecutive eight-hour shifts at Otter Creek approximately one hour earlier.  The accident occurred in Magoffin County, Kentucky, approximately three miles from Vest's residence.

Vest alleges that the accident was caused by Defendant's callous disregard of the safety of its correctional officers.  In particular, Vest claims that Otter Creek was chronically understaffed, and its correctional officers were, in turn, subjected to mandatory overtime requirements.[1]  According to Vest, overtime assignments were left to the discretion of the shift supervisors, and the supervisors for his shift (second shift) created what was commonly referred to as a "hit list" to allocate them.  The system worked as follows: if Otter Creek needed correctional officers for third shift coverage (i.e., from midnight to 8 a.m.),

---

[1] Plaintiff claims that failure to comply with these requirements resulted in disciplinary action.

a second shift supervisor would "hit" a second shift correctional officer for a double shift; that correctional officer was required to work his/her normal shift and then, without advance preparation or further rest, work another full eight-hour shift until 8 a.m. the following morning; as a result, the targeted officer would work an uninterrupted duty period of sixteen hours, from 4 p.m. at the start of the first shift to 8 a.m. the following day. The long hours were especially hard on Vest, whose round-trip commute to and from Otter Creek was 2-3 hours long.

Plaintiff also alleges that his supervisors applied this "hit list" in an arbitrary fashion. In theory, each correctional officer was required to work one double-shift before any officer was "hit" a second time. In practice, however, Plaintiff worked two double shifts over a three-day period. Plaintiff was "hit" for a double shift on Saturday, September 6, 2003. He then worked his regularly-scheduled shift the following day. When Plaintiff reported to work on Monday, September 8, he was informed that he was "hit" again, and would have to stay until 8 a.m. on Tuesday, September 9.

Plaintiff told Captain Bruce Johnson that he was too tired to stay, and reiterated his concerns to CCA management on several occasions throughout the night. Nevertheless, Plaintiff was required to work the entire shift and did not leave Otter Creek until 8 a.m. on September 9, 2003. He was approximately three miles from his home when fell asleep at the wheel, veered off the road, and struck a tree. The accident occurred approximately one hour after Vest completed his double-shift.

It is undisputed that Otter Creek had workers' compensation coverage in effect at the time of Vest's accident, and that Vest did not affirmatively reject coverage. Defendant filed a motion for summary judgment, alleging that Plaintiffs' claims are barred by the

3

exclusivity provision of Kentucky's Workers' Compensation Act. Plaintiffs filed a response, and Defendant replied. Plaintiffs subsequently filed a motion to strike that reply.[2] For the reasons that follow, Defendant's motion for summary judgment (Doc. #13) is **DENIED**.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *Id.* at 324. All evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986). However, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1427, 1479-80 (6th Cir. 1989).

### B.  Discussion

Defendant argues Plaintiff's negligence action is barred by the exclusivity provision of the Kentucky Workers' Compensation Act because: 1) Defendant, as employer, elected

---

[2]In its reply, Defendant, without citing any authority, asserts that if its duty to Plaintiff "arises from the employment relationship, the workers' compensation bar will apply." Defendant's reply raised no new arguments, but rather related to whether Plaintiff's injury is covered by the Kentucky's Workers' Compensation Act. For that reason, Plaintiff's Motion to Strike Defendant's reply is **DENIED**.

4

to be covered by the Act, 2) Plaintiff, as employee, did not reject or opt-out of coverage, and 3) the exception to the exclusivity provision of the Act does not apply. Plaintiff, on the other hand, argues his negligence action is not precluded because: 1) he did not suffer an "injury" under the Act, and 2) the accident did not occur during the course of his employment.

Kentucky's workers' compensation statute, codified in K.R.S. Chapter 342, was enacted "to compensate workers who are injured in the course of their employment for necessary medical treatment and for a loss of wage-earning capacity, without regard to fault." *Adkins v. R & S Body Co.*, 58 S.W.3d 428, 430 (Ky. 2001). The Act imposes liability on an employer for "compensation for injury, occupational disease, or death." K.R.S. § 342.610(1). "Injury" is defined as:

> any *work-related* traumatic event or series of traumatic events, including cumulative trauma, *arising out of and in the course of employment* which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings. Injury does not include the effects of the natural aging process, and does not include any communicable disease unless the risk of contracting the disease is increased by the nature of the employment. Injury when used generally, unless the context indicates otherwise, shall include an occupational disease and damage to a prosthetic appliance, but shall not include a psychological, psychiatric, or stress-related change in the human organism, unless it is a direct result of a physical injury.

K.R.S. § 342.0011(1) (emphasis added). On its face, therefore, the statute applies only to work-related injuries, i.e., injuries that arise out of and in the course of employment. *See Seventh Street Road Tobacco Warehouse v. Stillwell*, 550 S.W.2d 469, 470 (Ky. 1976) (noting that "work-related" and "arising out of and in the course of employment" are synonymous terms). The "arising out of" requirement concerns the origin or causal relationship between the injury and the employment relationship; whereas, the "in the

5

course of" requirement concerns the time, place, and circumstances of the incident resulting in the injury. *See, e.g.*, *Stapleton v. Fork Junction Coal Co.,* 247 S.W.2d 372, 373 (Ky. 1952).

Kentucky's workers' compensation statute affords certain protections not only to injured employees, but to their employers as well.  For example, K.R.S. § 342.690(1) generally provides for exclusive recovery under workers' compensation and immunity from civil tort actions to employers for work-related injuries to employees.  *See Travelers Indemnity Co. v. Reker,* 100 S.W.3d 756, 760 (Ky. 2003); *Shamrock Coal Co., Inc. v. Maricle,* 5 S.W.3d 130, 133 (Ky. 1999).  This section is one of the most heavily-litigated provisions of the Act.  In order for an employer to invoke the exclusive remedy provision of the statute, as Defendant does here, the same limitation applies - that is, the injury must be work-related in that it arises out of and in the course of the employment relationship. Generally, this is a mixed question of law and fact.  *See Jackson v. Cowden Manufacturing Co.,* 578 S.W.2d 259, 265 (Ky. Ct. App. 1978).  Where the facts are undisputed, however, the ultimate issue of whether an injury is work-related is a legal issue for the Court.  *Id*.

Defendant maintains that Plaintiff's accident was work-related because he alleges it was caused by the number of hours he was required to work (i.e., the length of his shift(s)). (Doc. #13, p. 9). Plaintiff concedes that Defendant's "arbitrary, excessive and unsafe overtime assignment practices caused [his] accident and injuries,"[3] but maintains that "an accident could be causally connected to employment and still not arise 'in the

---

[3] *See* Doc. #15, p. 7.

course' employment."[4] Thus, the parties agree that the "arising out of" element is satisfied. So, too, does the Court.

The second, and more difficult, inquiry is whether Plaintiff's injury occurred "in the course of" his employment. On this point, it is undisputed that Plaintiff's accident occurred after he had completed his second shift at Otter Creek, and was returning to his home in Royalton. As a general rule, "injuries which occur while the employee is on the way to or from the work-site are not compensable." *Pierson v. Lexington Public Library*, 987 S.W.2d 316, 318 (Ky. 1999). When an employee is off duty, "the relationship of employee and employer is ordinarily suspended ... so injuries occurring when the employment relationship [is] suspended are typically not within the course of employment. *Nunn v. First Healthcare Corp.*, No. 2003-CA-000777-MR, 2004 WL 2011282, at *2 (Ky. Ct. App. Sept. 10, 2004 ) (unpublished decision). Stated another way,

> injuries sustained by workers when they are going to or returning from the place where they regularly perform the duties connected with their employment are not deemed to arise out of and in the course of the employment as the hazards ordinarily encountered in such journeys are not incident to the employer's business.

*Receveur Constr. Co./Realm, Inc. v. Rogers*, 958 S.W.2d 18, 20 (Ky. 1997) (citation omitted).

This principle, commonly known as the "going and coming rule," is based upon the idea that the "Workmen's Compensation Act was not intended to protect an employee against all perils of going to and from his regular place of employment." *Black v. Tichenor*, 396 S.W.2d 794, 795 (Ky. 1965). The rule is, however, subject to exceptions. For

---

[4] *See* Doc. #15, p. 19.

example, under the "service to the employer" exception, "transitory activities of employees are covered if they are providing some service to the employer." *Rogers*, 958 S.W.2d at 20. *See also Sturgill & Sons v. Fairchild*, 647 S.W.2d 796, 797 (Ky. 1983) (stating, "[w]here an employee is traveling between his home and the place of employment and is not performing some special service or benefit for his employer, his injuries are not sustained in the course of his employment"). Those exceptions, however, have no applicability in this case.

The Supreme Court of Oregon was confronted with similar facts and legal issues in the case of *Krushwitz v. McDonald's Restaurants of Oregon, Inc.*, 919 P.2d 465 (Or. 1996). There, the decedent, an 18-year-old high school student, worked part-time at a restaurant owned by the defendant. *Id*. at 467. On the day in question, the decedent worked his normal shift (3:30 p.m. to 8:00 p.m.), and in an effort to earn extra money, volunteered to work an additional shift later that night (from midnight to approximately 8:00 a.m.). *Id*. Upon completing that shift, the decedent told his supervisor that he was too tired to work his upcoming afternoon shift and asked that another employee replace him. *Id*. He then left the restaurant to drive home. *Id*. On his way, the decedent fell asleep at the wheel and was killed when his automobile crossed the center line on the highway and struck another automobile head-on. *Id.* The decedent's mother commenced a wrongful death action where the court was called upon to decide two related issues: 1) whether an employee who was killed in an automobile accident while driving home from work suffered a "compensable injury" as that term is defined by Oregon's Workers' Compensation Law;[5] and 2) whether

---

[5] Oregon's workers' compensation statute contains the same operative language as the Kentucky statute. Oregon Revised Statutes § 656.005(7)(a) provides, in part: "A 'compensable

8

the exclusivity provisions contained in the statute precluded the plaintiff's wrongful death action. *Krushwitz*, 919 P.2d at 467. The court answered both questions in the negative. *Id*.

The court began by addressing the first prong of the compensability test, that is, whether the decedent's accident "arose out of" his employment with the defendant. *Id.* at 469. The court concluded, without difficulty, that this requirement was satisfied because the plaintiff alleged that, by permitting her son to work long hours on a school day, the defendant effectively caused his death. *Id*.

The parties in *Krushwitz*, much like the parties in this case, disagreed over the second prong of the workers' compensation statute, the "in the course of" prong. *Id.* In *Krushwitz*, the plaintiff argued that because the accident occurred after her son had finished working and left the defendant's premises, his death did not occur in the course of his employment. *Id.* The defendant, on the other hand, argued that an exception to the "going and coming rule" applied. *Krushwitz*, 919 P.2d at 469.

The court rejected the defendant's argument finding instead that, at the time of his death, the decedent had completed his shift and left his place of employment, and was

---

injury' is an accidental injury ... *arising out of and in the course of employment* requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means ...." (Emphasis added.) Much like their Kentucky counterparts, the Oregon courts have held that the "arising out of" prong of the compensability test requires that some causal link exist between the employee's injury and his/ her employment, *see Norpac Foods, Inc. v. Gilmore,* 318 Or. 363, 366 (Or. 1994), while the "in the course of" prong requires that the time, place, and circumstances of the employee's injury justify connecting that injury to the employment. *Ibid.* Therefore, the courts view the two prongs as two parts of a single "work-connection" analysis, in order to determine whether an employee suffered a compensable injury. *Rogers v. SAIF,* 289 Or. 633, 643 (Or. 1980).

merely coming home from work. *Id*. at 470. Having determined that his death fell squarely within the parameters of the "going and coming" rule, the court concluded that the employee's death did not occur in the course of his employment, he did not suffer a compensable injury under the workers' compensation statute, and, therefore, the exclusivity provisions of the statute did not bar the plaintiff's wrongful death action. *Id*. at 473.

Though not binding, the Court finds *Krushwitz's* analysis instructive. The record in this case reveals that Plaintiff had completed his shift at Otter Creek and was returning home when his accident occurred on the morning of September 9, 2003. His commute is precisely the type of situation to which the "going and coming rule" was intended to apply. The Court concludes, therefore, that: 1) Plaintiff's accident did not occur "in the course of" his employment with CCA, 2) he did not suffer a compensable injury under K.R.S. § 342.0011(1), and 3) consequently, the exclusivity provision of the statute, K.R.S. § 342.690(1), does not operate to preclude the present negligence action.[6] *See Wymer v. JH Properties, Inc.*, 50 S.W.2d 195 (Ky. 2001) (holding that the plaintiff's medical malpractice claim against the defendant-employer, which was separate and distinct from her workers' compensation claim for a work-related accident, was not preempted by K.R.S. § 342.690(1)).

---

[6]In so doing, the Court rejects Defendant's argument that this case is governed by Kentucky's workers' compensation statute simply because Plaintiff and Defendant shared an employee-employer relationship. Defendant argues that: 1) the statute controls, and 2) Plaintiff's injuries would not be compensable under its express terms (presumably, based upon the "going and coming" rule). According to Defendant, this result does not compel the conclusion that Plaintiff has a remedy under the common law. In the Court's view, however, the "going and coming" rule operates generally to take this case out of the realm of workers' compensation, rather than specifically to render Plaintiff's injury non-compensable under the statute.

## III.  CONCLUSION

Accordingly,

**IT IS ORDERED** that:

(1)   Defendant's motion for summary judgment (Doc. #13) be, and hereby is, **DENIED**; and

(2)   Plaintiffs' motion to strike Defendant's reply (Doc. #18) be, and hereby is, **DENIED**.

This 23rd day of December, 2005.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\Opinions\7-04-311-MSJ.wpd